**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRENISE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11-CV-685 CAS |
| | ) | |
| MV STUDENT TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant MV Student Transportation's motion for summary judgment. Plaintiff Trenise Brown opposes the motion and it is fully briefed. For the following reasons, the Court will grant defendant's motion for summary judgment.

**Background**

Plaintiff Trenise Brown ("Brown") is an African-American female who was hired by defendant MV Student Transportation ("MVST") as a bus driver in August 2004. In May 2010, Brown applied for a loan at Americash Loans, LLC ("Americash"), which required verification of her employment. The completed employment verification form that was faxed to Americash from MVST's fax machine included the forged signature of MVST's dispatch supervisor and incorrectly stated that Brown was employed full-time when she was actually a part-time employee. Brown was suspended from employment while MVST investigated the forgery, and it terminated her employment in June 2010 for alleged suspected involvement in the forgery of the employment verification form and for failure to cooperate during the investigation. Brown filed a charge of discrimination against MVST in August 2010 alleging race and retaliation discrimination.

Brown filed this action in April 2011. Her Amended Complaint asserts claims for race and retaliation discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq. (Count I), and race discrimination in violation of 42 U.S.C. § 1981. Brown states in her memorandum in opposition to MVST's motion for summary judgment, however, that she is "no longer pursuing her retaliation claim." Pl.'s Mem. Opp. Summ. J. at 14. The Court will treat this statement as a motion for leave to dismiss the retaliation claim with prejudice and grant the same.

**Legal Standard**

The Eighth Circuit recently clarified the appropriate standard for consideration of motions for summary judgment, including those filed in employment discrimination cases, explaining as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted). The Eighth Circuit also explained what the nonmoving party must do to meet its obligation to show that disputed facts are material:

> In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying "facts that might

affect the outcome of the suit." Anderson [v. Liberty Lobby, Inc.], 477 U.S. [242] at 248 [(1986)]. The nonmoving party must then categorize the factual disputes in relation to the legal elements of her claim. Id.; Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006).

Quinn v. St. Louis County, 653 F.3d 745, 751-52 (8th Cir. 2011). To survive a motion for summary judgment, the nonmoving party must "explain the legal significance of her factual allegations beyond mere conclusory statements importing the appropriate terms of art" and provide a "meaningful legal analysis explaining how, under the applicable law, the disputed facts might prove [her] claim at trial." Id. at 752 (internal citations omitted).

**Facts**

## I.

Local Rule 4.01(E) provides with respect to summary judgment motions:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

Brown failed to submit a responsive statement of material facts as to which she contends a genuine issue exists with citation to the record, as required by Rule 4.01(E). As a result, for purposes this motion Brown is deemed to have admitted all facts that were not specifically controverted. See Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999); see also Reasonover v. St. Louis County, Mo., 447 F.3d 569, 579 (8th Cir. 2006) (district court did not abuse

its discretion in deeming facts set forth in moving party's summary judgment motion admitted under E.D. Mo. Local Rule 4.01(E) where no timely response was filed); <u>Ridpath v. Pederson</u>, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E. D. Mo. Local Rule 4.01(E)).  The Court therefore adopts MVST's statement of uncontroverted material facts as its findings of fact for purposes of summary judgment, with some modifications and additions.

**II**.

<u>The Parties</u>

     1.  Defendant MVST is a privately held corporation that provides passenger transportation to students.  (Ex. A, Affidavit of Annette Orf ("Orf Aff."), ¶ 3).

     2.  Approximately ninety percent (90%) of MVST's workforce is African-American.  (Ex. B, Deposition of Trenise Brown ("Pl. Dep."), at 77:25–78:4).

     3.  Annette Orf does most of the hiring for the MVST facility located at 1801 North Broadway, St. Louis, Missouri 63102, at which she is the Manager.  (Ex. B, Pl. Dep. at 78:5-7; Ex. A, Orf Aff. at ¶¶ 2, 7).

     4.  MVST employed plaintiff Trenise Brown as a bus driver.  (Ex. A, Orf Aff. at ¶ 4).

     5.  Americash is a financial institution that provides loans.  (Ex. B, Pl. Dep. at 93:1-2).

<u>MVST's Handbook and Relevant Policies</u>

     6.  MVST's policies do not condone any type of harassment or discrimination based on race and color.  (Ex. B, Pl. Dep. at 89:1-11).

     7.  MVST's policies limit the people who can access the personal information of employees, such as social security numbers.  (Ex. A, Orf Aff. at ¶ 25).

8. As part of new-employee training, all new MVST employees receive an Employee Handbook. (Ex. A, Orf Aff. at ¶ 23, 24; Ex. B., Pl. Dep. at 86:14–88:6).

9. MVST's Employee Handbook contains a copy of MVST's Work Rules and Anti-Harassment Policy. (Ex. B, Pl. Dep. at 87:23–88:9 (citing Dep. Ex. 14, Section Two: Work Rules)).

10. MVST's Anti-Harassment policy prohibits discrimination based on race or color. (Ex. B, Pl. Dep. at 88:22-25).

11. MVST's Work Rules provide for discipline up to and including termination for the falsification of records. (Ex. B, Pl. Dep. at 88:10-17 (citing Dep. Ex. 14, Section Two: Work Rules)).

12. MVST's Work Rules provide MVST has discretion in how to discipline an employee, including the ability to jump steps and go to immediate termination based on the severity of misconduct. (Ex. B, Pl. Dep. at 76:15-19).

13. In August 2004, Brown received a copy of, reviewed, and understood MVST's Employee Handbook. (Ex. B, Pl. Dep. at 86:14–87:22 (citing Dep. Ex. 12, Handbook Acknowledgment form)).

14. On August 1, 2009, Brown received a copy of, reviewed, and understood MVST's revised Employee Handbook. (Ex. B, Pl. Dep. at 87:12-22 (citing Dep. Ex. 13, Acknowledgment)).

15. Brown received a copy of MVST's work rules. (Ex. B, Pl. Dep. at 87:16–88:6).

16. Brown received a copy of, reviewed, and understood MVST's Anti-Harassment policy. (Ex. B, Pl. Dep. at 89:14-90:1 (citing Dep. Ex. 16, Harassment Policy Acknowledgment); see also Dep. Ex. 15, Acknowledgment).

<u>Brown's Employment</u>

17.  MVST hired Brown as a bus driver in August 2004.  (Ex. A, Orf Aff. at ¶ 5).

18.  Annette Orf made the decision to hire Brown.  (Ex. A, Orf Aff. at ¶ 6; Ex. B, Pl. Dep. at 77:21-22).

19.  Annette Orf served as Brown's supervisor while MVST employed Brown.  (Ex. A, Orf Aff. at ¶ 8).

20.  According to Brown, she and Annette Orf had a "pretty decent" relationship.  (Ex. A, Orf Aff. at ¶ 9; Ex. B, Pl. Dep. at 80:10-11).

21.  Annette Orf attended Brown's birthday party, that occurred offsite of MVST's property. (Ex. B, Pl. Dep. at 80:18-20; Ex. A, Orf Aff.. at ¶ 10).

22.  Annette Orf kept in her office a picture from Brown's birthday party that Brown had given to her.  (Ex. A, Orf Aff. at ¶ 11; Ex. B, Pl. Dep. at 81:15-17).

<u>The Loan</u>

23.  On May 13, 2010, Brown applied for a loan at Americash.  (Ex. B, Pl. Dep. at 92:20–93:2; 96:10-13).

24.  As part of Brown's loan application, Americash faxed an Employment Verification Form to MVST.  (Ex. B, Pl. Dep. at 93:1-11).

25.  Brown provided Americash the fax number to use for faxing the Employment Verification Form.  (Ex. B, Pl. Dep. at 93:1-11).

26. Brown knew MVST's dispatch office and payroll office had different fax numbers.  (Ex. B, Pl. Dep. at 224:7–225:5).

27.  Brown provided Americash the fax number for the fax machine located in MVST's dispatch office, not the fax machine located in the payroll office.  (Ex. B, Pl. Dep. at 224:23–225:5).

28. Americash faxed Brown's Employment Verification Form to the fax machine in the dispatch office. (Ex. B, Pl. Dep. at 224:23–225:5).

29. The completed Employment Verification Form faxed back to Americash from MVST's fax machine included the forged signature of MVST dispatch supervisor Terrie Buresh. (Ex. B, Pl. Dep. at 114:7-8, 126:25–127:6).

30. The completed Employment Verification Form faxed back to Americash from MVST's fax machine incorrectly stated that Brown was employed full-time; Brown is actually a part-time employee. (Ex. B, Pl. Dep. at 114:7-8, 126:25–127:6).

31. Brown collected the loan proceeds from Americash on May 15, 2010. (Ex. B, Pl. Dep. at 108:25–109:3).

The Investigation

32. Kim Billups, MVST's Safety & Administrative Supervisor (an African-American) and Annette Orf conducted an investigation into the forged Employment Verification Form. (Pl.'s Ex. 8 at 6-7).

33. Dispatch supervisor Terrie Buresh (a Caucasian), dispatcher Christine Craig (a Caucasian), dispatcher Chanel Guerin (an African-American), Brown, and representatives of Americash participated in the investigation. (Pl's Ex. 8 at 7).

34. Brown provided a written statement at the time of MVST's investigation into the forged Employment Verification Form. (Ex. B, Pl. Dep. at 69:24-70:2). Brown was also questioned by Billups and Orf. (Id. at 125:1-18).

35. Brown's statement provided to MVST incorrectly stated her whereabouts on May 13, 2010 because she stated that she went home after leaving Americash, when actually she went to a

restaurant for lunch and then returned to MVST's base for a safety meeting. (Ex. B, Pl. Dep. at 93:1-25; 100:18-25–101:1-5; 128:13-25).

36.  During the period of time when MVST investigated Brown, she never voiced either formal or informal complaint to management regarding discrimination.  (Ex. B, Pl. Dep. at 149:9-17).

37.  Brown admits it is "suspicious" there was "a forged name on an employment verification that [she] received the monetary benefit of."  (Ex. B, Pl. Dep. at 69:2-7).

38.  Brown admits it was proper for MVST to suspend her while investigating the forged verification form.  (Ex. B, Pl. Dep. at 69:8-11, 69:12-15).

39.  Dispatch supervisor Terrie Buresh provided a written statement at the time of MVST's investigation into the forged Employment Verification Form, (Pl.'s Ex. 5), and dispatchers Christine Craig and Chanel Guerin also provided written statements.  (Pl.'s Ex. 8 at 7).  Guerin was also questioned by Orf about the Employment Verification Form.  (Pl.'s Ex. 9, Guerin Dep. at 76:15-25).

Brown's Termination

40.  MVST terminated Brown's employment on June 2, 2010.  (Ex. B, Pl. Dep. at 145:7-10).

41.  Brown tried to address the lack of a hearing following her termination with MVST.  (Ex. B, Pl. Dep. at 148:9-16).

42.  On June 25, 2010, Brown wrote a letter to MVST's owners regarding a hearing she was supposed to have within two days after she was terminated.  (Ex. B, Pl. Dep. at 148:14-22; 156:15-20).

43.  MVST also suspended and then later terminated dispatcher Chanel Guerin's employment in connection with the forged Employment Verification Form.  (Ex. A, Orf Aff. at ¶ 14; Pl.'s Ex. 8 at 7).

Brown's Discrimination Complaint

44. Brown filed a charge of discrimination against MVST with the Missouri Human Rights Commission on June 16, 2010. (Ex. B, Pl. Dep. at 143:19-23).

45. Brown's discrimination complaint is based solely on her termination, not her suspension or MVST's investigation of the forged employment verification form. (Ex. B, Pl. Dep. at 141:14-20).

46. Brown claims she was discriminated against "because there was no proof that [she] had any dealings with a forged verification form . . . because [she is] innocent of all that [she is] accused of." (Ex. B, Pl. Dep. at 68:19-23).

47. Prior to her termination, Brown never voiced any complaint to management about discrimination in the workplace. (Ex. B, Pl. Dep. at 149:21-25).

Proposed Comparator #1 – Unnamed Monitor #1

48. MVST employed an unnamed bus monitor ("Unnamed Monitor #1"). (Ex. B, Pl. Dep. at 162:4-21, 162:25–163:2).

49. Unnamed Monitor #1 is Caucasian. (Ex. B, Pl. Dep. at 162:4-21, 162:25–163:2).

50. MVST disciplined, but did not terminate, Unnamed Monitor #1 when a student fell out of his wheelchair while the monitor was pushing the student's wheelchair. (Ex. B, Pl. Dep. at 162:4-21, 162:25–163:2).

Proposed Comparator #2 – Unnamed Monitor #2

51. MVST employed an unnamed bus monitor ("Unnamed Monitor #2"). (Ex. B, Pl. Dep. at 163:6-8).

52. Unnamed Monitor #2 is African-American. (Ex. B, Pl. Dep. at 163:6-8).

53. MVST terminated Unnamed Monitor #2 after he told a student to fight back and retaliate back against other students "the same way they offended you." (Ex. B, Pl. Dep. at 163:6-8).

Proposed Comparator #3 – Christine Craig

54. MVST employed Christine Craig ("Craig") as a dispatcher. (Ex. A., Orf Aff. at ¶ 12).

55. Craig is Caucasian. (Ex. A, Orf Aff. at ¶ 13).

56. MVST hired Tiffany Williams ("Williams") to replace former dispatcher Chanel Guerin, who was terminated in conjunction with the same forgery investigation as Brown. (Ex. A, Orf Aff.. at ¶ 14; Ex. B, Pl. Dep. at 50:5–51:1).

57. Williams is African-American. (Ex. B, Pl. Dep. at 51:2-4).

58. During her very first week on the job, Williams noted a route change for a student on a new Route Change Form, instead of noting it on the running Route Change Form. (Ex. A, Orf Aff. at ¶ 15).

59. Craig noticed Williams' mistake of making a new form instead of using the running form. (Ex. A, Orf Aff. at ¶ 16).

60. To correct the error, Craig copied the information onto the running form, including Williams' initials. (Ex. A, Orf Aff. at ¶ 17).

61. Craig did not change, add, or delete any information. (Ex. A, Orf Aff. at ¶ 18).

62. Of their own accord, Craig and Williams jointly brought this situation to the attention of Annette Orf. (Ex. A, Orf Aff. at ¶ 19).

63. A route change form is an MVST document for internal use only. (Ex. A, Orf Aff. at ¶ 20; Ex. B, Pl. Dep. at 165:7-9).

64. When the forged Route Change Form was reported to Annette Orf, Orf verbally reprimanded Craig. (Ex. A, Orf Aff. at ¶ 21; Ex. B, Pl. Dep. at 165:7-9).

65. When the forged Route Change Form was reported to Annette Orf, Orf told Craig and Williams the standard procedure at MVST is for a dispatcher to correct his or her own error on a Route Change Form. (Ex. A, Orf Aff. at ¶ 22; Ex. B, Pl. Dep. at 77:8-11).

Proposed Comparator #4 – Mary Hill

66. MVST employed Mary Hill as a bus driver. (Ex. B, Pl. Dep. at 33:21–34:2).

67. Mary Hill is African-American. (Ex. B, Pl. Dep. at 33:21–34:2).

68. The monitor on Mary Hill's bus (hereinafter "Unnamed Monitor #3") hit a student on the bus. (Ex. B, Pl. Dep. at 33:21–34:2).

69. MVST terminated Hill because the monitor on Hill's bus hit a student on the bus. (Ex. B, Pl. Dep. at 33:21–34:2).

70. MVST re-hired Unnamed Monitor #3. (Ex. B, Pl. Dep. at 33:21–34:2).

71. MVST did not re-hire Hill. (Ex. B, Pl. Dep. at 33:21–34:2).

Proposed Comparator #5 – Unnamed Monitor #3

72. MVST employed an unnamed bus monitor (Unnamed Monitor #3) as the monitor on Hill's Bus. (Ex. B, Pl. Dep. at 33:21–34:2).

73. Unnamed Monitor #3 is Caucasian. (Ex. B, Pl. Dep. at 33:21–34:2).

74. MVST terminated Unnamed Monitor #3 as a result of the monitor hitting a student on the bus. (Ex. B, Pl. Dep. at 33:21–34:2).

75. MVST re-hired Unnamed Monitor #3. (Ex. B, Pl. Dep. at 33:21–34:2).

Proposed Comparator #6 – Tamara Brown

76. MVST employed Tamara Brown. (Ex. B, Pl. Dep. at 47:8–48:2).

77. Tamara Brown was involved in an argument with Annette Orf. (Ex. B, Pl. Dep. at 47:8–48:2).

78. During the argument, Tamara Brown used profanity, threw her badge down on Annette Orf's desk, and told Orf she quit. (Ex. B, Pl. Dep. at 47:8–48:2).

79. After she quit, Tamara Brown apologized to Annette Orf and asked for her job back. (Ex. B, Pl. Dep. at 47:8–48:2).

80. MVST did not re-hire Tamara Brown. (Ex. B, Pl. Dep. at 47:8–48:2).

Proposed Comparator #7 – Kathryn Taylor

81. MVST employed Kathryn Taylor ("Taylor"). (Ex. B, Pl. Dep. at 48:11–49:16).

83. Taylor is African-American. (Ex. B, Pl. Dep. at 49:2).

83. Taylor did not like Annette Orf. (Ex. B, Pl. Dep. at 48:19–49:3).

84. Taylor and Annette Orf got into an argument. (Ex. B, Pl. Dep. at 48:19–49:3).

85. Taylor walked off the job. (Ex. B, Pl. Dep. at 48:19–49:3).

86. MVST did not re-hire Taylor. (Ex. B, Pl. Dep. at 49:12-13).

Proposed Comparator #8 – Terrie Buresh

87. MVST employed Terrie Buresh ("Buresh") as a dispatch supervisor. (Ex. B, Pl. Dep. at 114:7-8).

88. Buresh is Caucasian. (Ex. B, Pl. Dep. at 49:2-3).

89. Buresh has walked off the job twice. (Ex. B, Pl. Dep. at 49:3-11).

90. On one occasion, Buresh missed work for two days, and then came back. (Ex. B, Pl. Dep. at 49:3-11).

Proposed Comparator #9 – Barb (Last Name Unknown)

91. MVST employed Barb (last name unknown). (Ex. B, Pl. Dep. at 74:10-13).

92. Barb's race is unknown. (Cf. Ex. B, Pl. Dep. at 74:10-13).

93. Barb was involved in several accidents with her bus before being terminated by MVST. (Ex. B, Pl. Dep. at 74:10-19).

Plaintiff Brown's Admissions

94. Brown admits Annette Orf's treatment of MVST drivers did not depend on the driver's skin color. (Ex. B, Pl. Dep. at 35:25–36:2).

95. Brown admits she "personally never had any occurrences where [she] felt discriminated against." (Ex. B, Pl. Dep. at 89:6-7).

96. Brown admits MVST had good cause to suspend her while it investigated the forged employment verification form.(Ex. B, Pl. Dep. at 141:5-13).

97. Brown admits she did not attempt to voice any complaint of discrimination to MVST personnel until after she was terminated. (Ex. B, Pl. Dep. at 147:12-16).

98. Brown admits she was unable to voice any complaint of discrimination to MVST personnel because no one ever called her back. (Ex. B, Pl. Dep. at 147:18-19).

99. Brown admits she did not attempt to voice any complaint of discrimination between the date of her suspension and her termination. (Ex. B, Pl. Dep. at 148:1-4).

100. Brown admits the employee hired by MVST to replace Chanel Guerin is African-American. (Ex. B, Pl. Dep. at 142:12-20).

101. Brown admits she did not file any charge of discrimination before June 16, 2010. (Ex. B, Pl. Dep. at 147:9-11).

102. Brown admits she does not believe someone was treated more favorably than her based on conduct similar to forgery. (Ex. B, Pl. Dep. at 161:14-19).

103. Brown admits her complaint regarding Craig did not allege racial discrimination or harassment. (Ex. B, Pl. Dep. at 156:8-10).

104.  Brown admits she never made any written complaints regarding race discrimination or harassment while employed by MVST.  (Ex. B, Pl. Dep. at 75:9-12).

105.  Brown admits she never took any complaints regarding race discrimination or harassment to management while employed by MVST.  (Ex. B, Pl. Dep. at 75:16-17).

106.  Brown admits she never witnessed any race discrimination or harassment while employed by MVST.  (Ex. B, Pl. Dep. at 75:17-19).

107.  Brown admits she was not terminated for misconduct even closely related to the misconduct of Unnamed Monitor #1 and Unnamed Monitor #2.  (Ex. B, Pl. Dep. at 163:15-18).

108.  Brown admits Craig is the only other MVST employee she is aware of involved in the alleged forgery of a document.  (Ex. B, Pl. Dep. at 77:12-15).

109.  Brown admits it was appropriate for MVST to investigate the forged employment verification form faxed to Americash on her behalf.  (Ex. B, Pl. Dep. at 38:10-14).

110.  Brown admits Annette Orf hired Tiffany Williams ("Williams") to work as a dispatcher at MVST to replace Chanel Guerin.  (Ex. B, Pl. Dep. at 142:12-20; Ex. A, Orf Aff. ¶ 14).

111.  Brown admits Williams is African-American.  (Ex. B., Pl. Dep. at 142:12-20).

112.  Brown admits she does not have any firsthand knowledge of any instances of unequal discipline based on race.  (Ex. B, Pl. Dep. at 41:25–42:7).

113.  Brown admits she was not terminated for walking off the job.  (Ex. B, Pl. Dep. at 49:17-21).

114.  Brown admits the forged route cover sheet incident occurred after MVST discharged her.  (Ex. B, Pl. Dep. at 49:17-21).

115.  Brown admits the signature of Terrie Buresh on the Employment Verification Form faxed to Americash on her behalf was forged.  (Ex. B, Pl. Dep. at 38:15-18).

116. Brown was not terminated from employment based on auto accidents. (Ex. B, Pl. Dep. at 74:22-24).

117. In 2002, before joining MVST, Brown filed a discrimination charge with the Missouri Human Rights Commission against her then current employer. (Ex. B, Pl. Dep. at 12:15-21).

**Discussion**

As stated above, Brown alleges that MVST terminated her employment based on her race, in violation of Title VII and § 1981. "The elements of claims alleging disparate treatment on the basis of race under Title VII and intentional employment discrimination on the basis of race under § 1981 are identical." Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir.1997); see 42 U.S.C. § 2000e–2(a). The Court therefore discusses these claims together.

To survive a motion for summary judgment, Brown may either "present admissible evidence directly indicating unlawful discrimination," or create "an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp.". Gibson v. American Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012) (quoted case omitted). Brown does not present direct evidence of race discrimination, so the Court analyzes her claim under the McDonnell Douglas burden-shifting framework.

Under this framework, Brown must first establish a prima facie case of discrimination. Jackson v. United Parcel Serv., Inc., 643 F.3d 1081, 1086 (8th Cir.2011). To establish a prima facie case of race discrimination Brown must show that (1) she is a member of a protected class, (2) she met MVST's legitimate expectations, (3) she suffered an adverse employment action, and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently).'" Gibson, 670 F.3d at 853-54 (quoting Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010)). If Brown is able to establish a prima

facie case, MVST "may rebut the prima facie case by articulating a non-discriminatory rationale for its action." Gibson, 670 F.3d at 854. In response, Brown must then prove that MVST's "proffered rationale was merely pretext for discrimination. [Brown] may prove pretext by adducing enough admissible evidence to raise genuine doubt as to the legitimacy of [the defendant's] motive." Id. (quotation marks, internal citation and quoted case omitted).

In this case, MVST contends that Brown cannot establish the fourth element of her prima facie case, that the circumstances of her termination give rise to an inference of discrimination. Brown contends she establishes the fourth element based on evidence that MVST disciplined African-American employees more harshly than white employees for similar conduct. "The burden of establishing a prima facie case of disparate treatment is not onerous." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). The Court will assume without deciding that Brown has established a prima facie case of race discrimination and proceed directly to analyze the discrimination claim under the pretextual prong of the analysis. See, e.g., Gibson, 670 F.3d at 854; Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 521 (8th Cir. 2010).

"A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." Lake, 596 F.3d at 874. "We have observed that there are 'at least two routes' for demonstrating a material question of fact as to pretext." Anderson, 606 F.3d at 521 (cited case omitted). "First, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact. Second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." Id. (internal quotation marks and citation omitted). "Both of these routes, in effect, amount to a showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action." Wallace v. DTG

Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006), abrogated in part on other grounds by Torgerson, 643 F.3d 1031.

MVST has articulated a legitimate, non-discriminatory reason for firing Brown: its belief that she was involved in the faxing of the forged employment verification form to Americash. The undisputed facts show that someone forged the employment verification form submitted to Americash on Brown's behalf, and that MVST initially suspended Brown while it conducted an investigation of the matter. There is also undisputed evidence that Brown incorrectly told MVST in a written statement prepared eleven days after the forgery that she went home, rather than returning to MVST's property, after she visited Americash to apply for the loan. MVST has therefore rebutted Brown's prima facie case by articulating evidence of a legitimate, nondiscriminatory reason for its treatment of her, see Gibson, 670 F.3d at 854; see also Torgerson, 643 F.3d at 1047 ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence."). As a result, the burden shifts back to Brown to prove that MVST's stated reason is a pretext for illegal race discrimination, by producing "enough admissible evidence to raise genuine doubt as to the legitimacy of [the defendant's] motive." Gibson, 670 F.3d at 854 (quoting Anderson, 606 F.3d at 521). This "burden to show pretext 'merges with the ultimate burden of persuading the court that [plaintiff was] the victim of intentional discrimination." Torgerson, 643 F.3d at 1046 (quoting Burdine, 450 U.S. at 256).

Brown argues that MVST did not have a legitimate, non-discriminatory reason for terminating her because there is an unresolved fact question as to whether she was actually involved in the forgery. This is an attempt to use the first route to show pretext, i.e., to directly rebut MVST's proffered reason as false. The first route "usually involves more than a rebuttal of the employer's

ultimate claims regarding its subjective motivations. It typically involves a broader rebuttal of the employer's underlying factual claims. See, e.g., Reeves [v. Sanderson Plumbing Products, Inc.], 530 U.S. [133] at 147 [(2000)] ('In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.')". Wallace, 442 F.3d at 1121.

Brown asserts that "[b]ased on its own investigation, [MVST] ultimately determined that [Brown] and Guerin were not responsible for the forgery of Buresh's signature nor misrepresentation that [Brown] was full-time on the ACL employment verification form, though [Brown] and Guerin were the only employees accused thereof, suspended and then discharged based on Defendant's investigation." Pl.'s Mem. Opp. Summ. J. at 5. The deposition testimony Brown cites as support for this assertion, her own and Chanel Guerin's, does not contain any assertion by Brown or Guerin as to the outcome of MVST's investigation. Moreover, Brown testified during her deposition that as far as she knew, MVST never determined who had completed the employment verification form. Pl. Dep. at 224:2-6. Given this testimony, it is difficult to understand how Brown can assert in good faith that MVST's investigation ultimately exonerated her. Brown does not offer any statement from MVST in support of her assertion. The Court finds that Brown has proffered no evidence that MVST determined she was not responsible for the forgery.

Brown also relies on circumstantial evidence to establish her innocence of the forgery, by attempting to show that the incorrect information as to her part-time status was irrelevant to her ability to obtain the loan. Specifically, Brown states that the loan processor at Americash informed her that Americash considered her to be a full-time employee, based on the number of hours shown on the pay check stubs; and that when Brown previously obtained a loan from Americash in 2009, her employment verification form showed that she was part-time, and Americash still gave her the

loan. Brown also contends that she gave Americash the facsimile number for MVST's dispatch office rather than its payroll office only because she was more familiar with the dispatch fax number, and states that she had provided Americash the dispatch fax number when she applied for the first loan in 2009.

Brown's assertions essentially amount to an argument that the decision to terminate her employment was based on erroneous conclusions. The issue before the Court, however, is not whether MVST's conclusion that Brown was involved in the forgery was correct. Instead, the issue is whether MVST conducted a thorough investigation and whether it made credibility determinations reasonably and in good faith. See Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 855 (8th Cir. 2005), abrogated on other grounds by Torgerson, 643 F.3d at 1043.

The Court concludes that MVST did so. MVST employees Annette Orf and Kim Billups conducted an investigation into the forged Employment Verification Form by asking questions and taking statements from Brown, Guerin, Craig and Buresh, as well as Americash representatives. MVST considered Brown's explanation, but obviously found it unbelievable in light of the suspicions circumstances that included the following: (1) Brown directed Americash to fax her employment verification form to MVST's dispatch office rather than its payroll office; (2) someone forged Terrie Buresh's name on Brown's employment verification form; (3) someone incorrectly stated on the Employment Verification Form that Brown worked full time rather than part time; (4) Brown was the only person who could benefit from the forgery and inclusion of incorrect information on the Employment Verification Form; and (5) Brown incorrectly told MVST during its investigation of the forgery that she went home after applying for the Americash loan, when in fact she returned to MVST's base and thus was in the vicinity of the dispatch office. Brown has produced no evidence showing that MVST did not believe she was guilty of misconduct in

connection with the forged Employment Verification Form. Cf. Rodgers, 417 F.3d at 855 (plaintiff failed to establish evidence of pretext where she produced no evidence that her employer did not believe she was guilty of misconduct).

The Eighth Circuit has often stated that the federal courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Bone v. G4S Youth Services, LLC, 686 F.3d 948, 955 (8th Cir. 2012) (quoted case omitted). As long as MVST had a "good faith" basis for discharging Brown, it does not matter whether Brown was involved in the forgery or not. See Euerle-Wehle v. United Parcel Service, Inc., 181 F.3d 898, 900 (8th Cir. 1999) (whether UPS correctly concluded that plaintiff committed serious violations of company policy that warranted her termination was not material, where UPS acted reasonably and in good faith in its investigation). Here, the undisputed evidence of a forgery and the suspicious circumstances listed above, coupled with MVST's investigation into the forgery, constitute a "good faith" basis for its decision to terminate Brown's employment.

Brown also attempts to use the second route to establish pretext, by attempting to rebut MVST's ultimate factual claim regarding the absence of discriminatory intent. See Wallace, 442 F.3d at 1121. Brown argues that sufficient evidence of intentional discrimination exists for a jury to believe that her allegations are correct and MVST's proffered explanation was not the true motivating explanation. See id. The facts Brown relies on to show intentional discrimination are that MVST disciplined her and other African-American employees more harshly than similarly-situated white employees.

Although the Court assumed that Brown established a prima facie case of disparate treatment, at the pretext stage, Brown must show that the proposed comparator employees were

"similarly situated in all relevant respects" and that the "misconduct of the more leniently disciplined employees [was] of comparable seriousness." Martinez v. W.W. Grainger, Inc., 664 F.3d 225, 230 (8th Cir. 2011) (quoting Wimbley v. Cashion, 588 F.3d 959, 962 (8th Cir. 2009)). At the pretext stage, "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Bone, 686 F.3d at 956 (quoting Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)).

Under this standard, Brown cannot establish pretext based on MVST's discipline of bus monitors for their conduct involving transported students, bus drivers who were disciplined for having vehicle accidents or based on their bus monitor's conduct, or employees who argued with Manager Annette Orf and/or walked off of the job, because none of these proposed comparator employees are similarly situated to Brown in all relevant respects. Moreover, several of Brown's proposed comparator employees are members of the same protected class, so their discipline cannot be used to establish pretext.

The only potential comparator for purposes of establishing pretext is dispatcher Christine Craig, who was involved in what Brown characterizes as a forgery but was only verbally reprimanded as a result. As an initial matter, Craig was a dispatcher while Brown was a bus driver. The Eighth Circuit has held that plaintiffs fail to show that coworkers are similarly situated where they hold different jobs than the plaintiff. See, e.g., Fercello v. County of Ramsey, 612 F.3d 1069, 1082 (8th Cir. 2010) (employees who had different positions were not similarly situated to the plaintiffs); LaCroix v. Sears, Roebuck & Co., 240 F.3d 688, 694 (8th Cir. 2001) (employee who worked in a different department and had a different position was not similarly situated). There is no evidence that MVST held Craig, a dispatcher, and Brown, a bus driver, to the same standards.

See Bone, 686 F.3d at 956. Merely establishing MVST's general progressive discipline policy from its employee handbook is insufficient to meet this burden because discipline can vary based on an employee's position and MVST's policy states that it is discretionary, not mandatory.

Brown has also failed to establish that Craig engaged in the same conduct without any mitigating or distinguishing circumstances. See id. Craig's conduct was not of comparable seriousness to that of which Brown was suspected, and mitigating circumstances exist, such that MVST's discipline of Craig cannot be used to establish a genuine issue of material fact as to pretext.

Craig copied information concerning a route change from one of MVST's internal route change forms to another to remedy a mistake made by another employee, Tiffany Williams. Williams was an African-American female hired to replace former dispatcher Chanel Guerin, who was terminated in conjunction with the same forgery investigation as Brown. During Williams' first week on the job, she noted a route change for a student on a new Route Change Form, instead of noting it on the running Route Change Form. Craig noticed Williams' mistake of making a new form instead of using the running form. To correct Williams' error, Craig copied the information onto the running form, including Williams' initials. Craig did not change, add, or delete any information when she copied it. Craig and Williams then voluntarily brought this situation to the attention of Manager Annette Orf of their own accord, and Orf told Craig and Williams the standard procedure at MVST is for dispatchers to correct their own errors.

Craig's conduct is readily distinguishable from and not remotely comparable to Brown's suspected role in the forgery of a loan document. Craig copied an internal business process document with no intent to deceive, in order to correct an error by a new employee. Merely copying the information from one internal document (a new Route Change Form) onto a different document (a running Route Change Form) without the intent to deceive is not similar conduct to forging a

supervisor's signature on an employment verification form for a loan application. Further, Craig voluntarily brought her action to her manager's attention and admitted to the manager that she copied Williams' initials, thus demonstrating she had no intent to deceive. This action by Craig is a significant mitigating factor not present in Brown's situation. See Twiggs v. Selig, 679 F.3d 990, 994 (8th Cir. 2012) (coworker had mitigating circumstances and was not similarly situated to the plaintiff where both lied to a supervisor in a meeting, but the coworker quickly corrected the lie while plaintiff continued to lie for months), petition for cert. filed, 81 U.S.L.W. (U.S. Dec. 5, 2012) (No. 12-704). Craig's conduct also differs from Brown's in that copying and submitting an internal business process document is not a crime, whereas transmitting a forged document by facsimile machine in support of a loan application could be a criminal offense. Craig's misconduct did not involve an attempt to obtain money or other benefit and did not involve a third party, but rather was merely an action to correct the clerical error of a new employee.

Taking the facts in the light most favorable to Brown, the Court finds that she fails to establish a genuine issue of material fact as to whether similarly situated employees outside the protected class were treated differently. As a result, Brown fails to establish a genuine issue of material fact with respect to pretext, and MVST's motion for summary judgment should be granted.

**Conclusion**

For the foregoing reasons, the Court finds that Brown has voluntarily abandoned her retaliation claim, and that MVST is entitled to judgment as a matter of law on Brown's Title VII and § 1981 race discrimination claims.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Trenise Brown's motion for leave to voluntarily dismiss her Title VII retaliation claim with prejudice is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant MV Student Transportation's Motion for Summary Judgment on plaintiff Trenise Brown's Title VII and 42 U.S.C. § 1981 claims is **GRANTED**.  [Doc. 46]

An appropriate judgment and order of dismissal will accompany this Memorandum and Order.

_____

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  _28th_  day of January, 2013.